Christopher J. Hamner, Esq. (SBN 197117)
**HAMNER LAW OFFICES, APLC**
26565 West Agoura Road, Suite 200-197
Calabasas, California 91302
Telephone: (888) 416-6654
chamner@hamnerlaw.com

Attorneys for Plaintiff Janetta Banks

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTA BANKS, an individual California resident,<br><br>Plaintiff<br><br>v.<br><br>FLOOR AND DECOR OUTLETS OF AMERICA, INC., a Delaware corporation; and DOES 1 THROUGH 10, inclusive,<br><br>Defendant | Case no.: 2:20-CV-02573-JWH-MAA<br><br>**PLAINTIFF'S** <u>**AMENDED**</u> **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF PAGA SETTLEMENT AND RELEASE**<br><br>[Filed Concurrently with Declaration of Christopher J. Hamner and [Proposed] Order]<br><br>Date:    January 8, 2021<br>Time:    9:00 a.m.<br>Place.:   Riverside Federal Building, Courtroom 2 |

**PLEASE TAKE NOTICE THAT ON** January 8, 2021, at 9:00 a.m., in Courtroom 2 of the George E. Brown Federal Building in Riverside, California, Plaintiff Janetta Banks ("Plaintiff") shall request approval of a PAGA settlement in this matter. This motion is based on the Points and Authorities below and the Declaration of Christopher J. Hamner ("Hamner Decl.").

1

2

# TABLE OF CONTENTS

3

4 **Page**

5 Table of Contents......................................................................... i

6 Table of Authorities.................................................................... iii

7

8     I.     Introduction....................................................................... 2

9     II.    Procedural History............................................................ 2

10
         A.    Plaintiff's PAGA Complaint to the LWDA........................ 2

11

12          B.    The Litigation................................................................ 3

13          C.    Investigation and Discovery.......................................... 4

14
         D.    The Mediation.............................................................. 4

15

16     III.    The PAGA Settlement...................................................... 4

17          A.    Liability Period and Aggrieved Workers........................... 5

18
         B.    Settlement Terms........................................................... 5

19
         C.    The Narrowly Tailored Scope of Released Claims.............. 6

20
         D.    Notice to the PAGA Settlement Members........................ 6

21

22          E.    Notice of the Settlement to the LWDA............................ 6

23
    IV.    Legal Argument................................................................ 7

24
         A.    The PAGA Statute......................................................... 8

25
         B.    Standards for Court Approval of PAGA Settlements............ 8

26
         C.    The Settlement is Fair and Reasonable............................ 8

27

28               1.    Plaintiff's Counsel Has Adequately Investigated the
PAGA Claims......................................................... 9

1

2

3        2.    Plaintiff's Counsel Has Made a Reasonable Valuation of
4              the PAGA Claims............................................ 11

5        3.    The Notice of PAGA Settlement and The Release of
6              Claims Are Proper........................................... 13

7        4.    Plaintiff's Counsel's Adequacy and Experience......... 13

8        5.    There are No Other Related or Overlapping PAGA
9              Cases........................................................ 14

10

V.    Conclusion............................................................. 14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES

3

4

**Federal Cases**                                                                                    **Page(s)**

5

6

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.,*
    253 F. Supp. 3d 1074 (C.D. Cal. 2017)...........................................9

7

8

*Garybo v. Bros.,*
    2020 WL 2765661 (E.D. Cal. May 28, 2020)...................................11

9

10

*Mejia v. Illinois Tool Works Inc.,*
    2019 WL 8135433, at (C.D. Cal. Dec. 12, 2019)..............................12

11

12

*Salazar v. Sysco Central Cal.,*
    2017 WL 1135801 (E.D. Cal. Feb. 2, 2017)......................................8

13

**California Cases**

14

15

*Arias v. Superior Court,*
    46 Cal. 4th 969 (2009)..............................................................7

16

17

*Dunk v. Ford Motor Co.,*
    48 Cal.App.4th 1974, 1801 (1996)................................................9

18

19

*In re Sutter Health Uninsured Pricing Cases,*
    171 Cal. App. 4th 495 (2009)....................................................13

20

21

*Iskanian v. CLS Transp. Los Angeles, LLC,*
    59 Cal. 4th 348 (2014)..............................................................7

22

23

*Kullar v. Foot Locker Retail, Inc.,*
    168 Cal. App. 4th 116, 133 (2008)............................................9, 13

24

25

*Ling v. P.F. Chang's China Bistro, Inc.,*
    245 Cal. App. 4th 1242 (2016)...................................................12

26

27

*Naranjo v. Spectrum Sec. Servs., Inc.,*
    40 Cal. App. 5th 444 (2019)..................................................11, 12

28

1

2

*Nordstrom Comm'n Cases*,
     186 Cal. App. 4th 576 (2010)................................................................ 8

*Osumi v. Sutton*,
     151 Cal. App. 4th 1355 (2007)............................................................. 8

*Thurman v. Bayshore Transit Mgmt. Inc.*,
     203 Cal.App.4th 1112 (2012)............................................................... 8

*Villacres v. ABM Indus. Inc.*,
     189 Cal.App.4th 562 (2010)................................................................7

**California Labor Codes**

Labor Code section 201.......................................................................... 3, 6

Labor Code section 202.......................................................................... 3, 6

Labor Code section 203..................................................................... 3, 6, 11, 12

Labor Code section 226..................................................................... 3, 6, 11, 12

Labor Code section 226.7.................................................................. 3, 6, 11, 12

Labor Code section 226.8....................................................................... 3, 6

Labor Code section 510.......................................................................... 3, 6

Labor Code section 512............................................................................. 6

Labor Code section 1174.......................................................................... 6

Labor Code section 1175.......................................................................... 6

Labor Code section 1182.12...................................................................... 6

Labor Code section 1194.......................................................................... 6

Labor Code section 1197.......................................................................... 6

Labor Code section 1197.1........................................................................ 6

Labor Code section 1198....................................................................... 3, 6

Labor Code section 1199.......................................................................... 6

Labor Code section 2698.......................................................................... 2

Labor Code section 2699(c)...................................................................... 7

1

Labor Code section 2699(f)...................................................................... 7

Labor Code section 2699(g)...................................................................... 8

Labor Code section 2699(i)...................................................................... 7

Labor Code section 2699 (*l*) (2).......................................................... 7, 13

Labor Code section 2699.3...................................................................... 3

Labor Code section 2802....................................................................... 3, 6

## POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff is a former hourly cashier for Defendant Floor and Decor Outlets of America, Inc. ("Defendant"), who complains of various California Labor Code violations. Plaintiff's operative First Amended Complaint seeks penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*

The parties recently engaged in a private mediation of Plaintiff's PAGA claims and have arrived at a proposed PAGA settlement of $35,000. After a $5,000 attorneys' fees payment to Plaintiff's counsel and a $4,350 payment to the proposed settlement administrator, Phoenix Administrators, Defendant will pay a Net PAGA Fund of $25,650. As required by the PAGA statute, 75% of the Net PAGA Fund will be paid to the California Labor and Workplace Development Agency ("LWDA"), and 25% of the Net PAGA Fund will be paid to the approximately 1,234 PAGA Settlement Members.

As set forth below, the settlement is fair and reasonable. The proposed PAGA settlement is based on the value of the claims compared against the likelihood that Defendant would be able to successfully defend most, if not all, of Plaintiff's claims. The proposed notice to the PAGA Settlement Members is clear and informative, and it complies with the requirements and standards for a PAGA settlement. The release is for PAGA claims only during the PAGA liability period of February 6, 2019 to the date the court approves the PAGA settlement.

Plaintiff respectfully requests that the proposed PAGA settlement and release be approved by this Court.

### II.    PROCEDURAL HISTORY

#### A.    Plaintiff's PAGA Complaint to the LWDA

Before bringing a PAGA lawsuit, an aggrieved employee must provide

1   written notice to the employer and to the LWDA, and must provide the LWDA

2   with a 65-day period to determine whether to investigate the alleged violations.

3   Cal. Lab. Code § 2699.3. If the LWDA does not respond within 65 days, or if the

4   LWDA responds that it does not intend to investigate, the aggrieved employee

5   may bring a civil suit to collect civil penalties. (*Id.*)

6   　　On February 6, 2020, Plaintiff made a written complaint to the LWDA in

7   compliance with California Labor Code section 2699.3. (Hamner Decl., ¶ 2, Ex.

8   A.) In her letter to the LWDA, Plaintiff alleged violations by Defendant of the

9   following Labor Code sections: Labor Code §§ 201-203 (Failure to Pay All

10  Wages Owed at Termination), Labor Code § 226 (Wage Statement Violations),

11  Labor Code § 226.7 (Failure to Provide Rest Breaks), Labor Code § 226.7 (Failure

12  to Provide Meal Periods), Labor Code §1194 (Failure to Pay Minimum Wages),

13  Labor Code § 510 (Failure to Pay Overtime Wages), Labor Code § 2802 (Failure

14  to Reimburse Expenses) and Labor Code § 1198 (Standard Working Conditions).

15  (*Id.*) The LWDA did not respond to this PAGA letter and to date has not

16  communicated that it intends to investigate or prosecute the matter on behalf of

17  the LWDA. (Hamner Decl. ¶ 3.)

18  　　**B.    The Litigation**

19  　　On March 18, 2020, Plaintiff filed a proposed class and representative

20  action lawsuit against Defendant. The original lawsuit alleged nine causes of

21  action for: (1) Failure to Pay Minimum Wages, (2) Failure to Provide Rest Breaks,

22  (3) Failure to Provide Meal Periods, (4) Failure to Pay Overtime, (5) Wage

23  Statement Violations, (6) Failure to Pay Wages to Resigned or Terminated

24  Employees, (7) Unfair Business Practices, (8) Injunctive Relief, and (9) PAGA

25  Penalties. (Dkt. No. 1.)

26  　　In June and July of 2020, the parties engaged in multiple conferences of

27  counsel regarding the facts of the case and a pre-employment arbitration

3

1    agreement executed between the parties.  (Hamner Decl., ¶ 5.)

2         Thereafter, the parties agreed that Plaintiff would file a First Amended

3    Complaint ("FAC") which alleges claims for PAGA penalties only.  (*Id.*)  On June

4    19, 2020, Plaintiff filed an FAC which alleged PAGA violations only.  (Dkt. No.

5    13.)  On July 2, 2020, Defendant filed an Answer to the FAC.  (Dkt. No. 14.)

6         **C.    Investigation and Discovery**

7         After Plaintiff filed her FAC, the parties agreed to explore alternative

8    dispute resolution, following an exchange of documents and information.

9         In advance of mediation, Defendant produced all of the necessary

10   information for Plaintiff to fully assess her claims and the strength of Defendant's

11   defenses.  Such information included: (1) Defendant's policies and procedures

12   during the relevant time period; (2) the number of non-exempt employees

13   employed by Defendant during the relevant time period; and (3) a 10% sample of

14   time punch and attestation records for the group of potentially "aggrieved"

15   employees that Plaintiff seeks to represent in this action.

16        **D.    The Mediation**

17        The parties engaged in a private mediation on September 15, 2020, with

18   well-respected wage and hour mediator Lisa Klerman.  (Hamner Decl., ¶ 6.)  At

19   the mediation, the parties engaged in extensive settlement negotiations, which

20   involved substantive offers and counteroffers between the parties.  (*Id.*)  The

21   settlement negotiations were adversarial and were conducted at arm's length.  (*Id.*)

22   Ultimately, at the conclusion of a full day of mediation, the negotiations resulted

23   in a settlement for PAGA penalties.  (*Id.*)

24   **III.   THE PAGA SETTLEMENT**

25        The executed PAGA Settlement Agreement and Release of PAGA Claims

26   (the "PAGA Settlement") is attached as Exhibit B to the Hamner Declaration.

27

Motion for PAGA Settlement Approval

### A.    Liability Period and Aggrieved Workers

The agreed upon PAGA settlement period is February 6, 2019 to the date of approval of this settlement by the Court.  The settlement covers approximately 1,234 allegedly aggrieved workers who worked in 12 of Defendant's Southern California stores.

### B.    Settlement Terms

The parties have agreed that Defendant shall pay a total PAGA settlement payment of $35,000.  The parties have agreed that Plaintiff shall submit a request for attorneys' fees not to exceed $5,000, and settlement administration costs shall not exceed $4,350.  The parties have agreed that settlement administration shall be completed by Phoenix Settlement Administrators.  The remainder of the PAGA settlement amount, after deducting the attorneys' fees and administration costs, equates to a "Net Settlement Fund" of $25,650.

Seventy-five percent (75%) of the Net Settlement Fund will be sent to the LWDA and twenty-five percent (25%) of the Net Settlement Fund will be allocated among the PAGA Settlement Members based on his or her proportionate share of the pay periods worked during the PAGA Period.  Partial pay periods will be counted as full pay periods.  The amount to be paid per pay period worked by each PAGA Settlement Member will be calculated by dividing the value of the portion of the PAGA Fund that will be paid to PAGA Settlement Members by the total number of pay periods worked by all PAGA Settlement Members during the PAGA Period.

The PAGA Settlement provides that the Court shall retain jurisdiction over the Parties and this Settlement, in order to: (i) monitor and enforce compliance of Settlement, and (ii) resolve any disputes over this Settlement or the administration of the benefits of this Settlement. (*See* Hamner Decl., ¶ 11, Ex. B, ¶¶ V, H.)

## C.    The Narrowly Tailored Scope of Released Claims

For the consideration stated above, the LWDA and PAGA Settlement Members, including Plaintiff, will provide the following narrowly tailored release of: "any and all claims, whether known or unknown, to recover penalties for any alleged violations of California Labor Code sections 201-203, 226, 226.7, 226.8, 510, 512, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, and the applicable California Industrial Welfare Commission Wage Orders." (*See* Hamner Decl., ¶ 12, Ex. B, ¶ IV., A.)

As a result of this release, the PAGA Settlement Members will be unable to bring a claim under, or recover in any other claim brought under, the PAGA for any violations of the Released Claims that took place between February 6, 2019 and the date the Court approves the PAGA settlement. (*Id.*)

## D.    Notice to the PAGA Settlement Members

The proposed notice to the PAGA Settlement Members is attached to the Hamner Declaration as Exhibit C.

The proposed notice provides the following information about the PAGA Settlement and how it affects each PAGA Settlement Member:

- The name of the case, the Court it was filed in, and the case number;
- The nature of the Labor Code violations alleged in the case;
- The total PAGA settlement amount, the amounts allotted for attorneys' fees and class administration costs, and the Net Settlement Amount to be distributed on a 75% / 25% basis to the LWDA and the PAGA Settlement Members;
- How payments to the PAGA Settlement are calculated and allocated;
- The nature of the PAGA claims being released as part of the settlement;
- Contact information for Plaintiff's and Defendant's counsel, and an

6

Motion for PAGA Settlement Approval

1    instruction not to contact the Court.

2    **E.    Notice of the Settlement to the LWDA**

3    Pursuant to California Labor Code section 2699(*l*)(2), in conjunction with

4    this motion, Plaintiff has submitted a copy of the proposed settlement and release

5    in this matter to the LWDA through its online portal.  (Hamner Decl., ¶ 15, Ex. D.)

6    A receipt of submission to the LWDA through the online portal is attached as

7    Exhibit E to the Hamner Declaration.

8    **IV.    LEGAL ARGUMENT**

9        **A.    The PAGA Statute**

10   PAGA allows aggrieved employees, defined "as any person who was

11   employed by the alleged violator and against whom one or more of the alleged

12   violations was committed," to bring a civil action to collect civil penalties for

13   California Labor Code violations.  Cal. Lab. Code § 2699(c).  An individual suing

14   under PAGA "does so as [a] proxy or agent of the state's labor law enforcement

15   agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).  "[A]n aggrieved

16   employee's action under the PAGA functions as a substitute for an action brought

17   by the government itself." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th

18   348, 381 (2014).  Consequently, PAGA allows an employee to recover only "civil

19   penalties on behalf of the state against his or her employer for [California] Labor

20   Code violations." *Id.* at 360; *see also Villacres v. ABM Indus. Inc.*, 189

21   Cal.App.4th 562 (2010) ("PAGA is limited to the recovery of civil penalties.").

22   PAGA establishes a default civil penalty of $100 for each aggrieved

23   employee per pay period for the "initial" violation, and $200 for each aggrieved

24   employee per pay period for each "subsequent" violation.  Cal. Lab. Code

25   § 2699(f).  Any civil penalties collected in a PAGA action must be divided 75

26   percent to the LWDA and 25 percent to the "aggrieved employees."  Cal. Lab.

27   Code § 2699(i).  An employee who prevails in a PAGA action is also entitled to

Motion for PAGA Settlement Approval

1  recover his or her reasonable attorneys' fees and costs.  Cal. Lab. Code § 2699(g).

2       Because the primary purpose is labor law enforcement, courts have

3  consistently permitted civil penalties to be assessed far below the maximum

4  amount based on the employer's compliance efforts and financial standing.

5  *Thurman v. Bayshore Transit Mgmt. Inc.*, 203 Cal.App.4th 1112, 1136 (2012)

6  (noting, *inter alia*, that documented efforts to comply with the state's labor laws

7  and the defendant's financial condition reasonably allow for the reduction of

8  PAGA civil penalties); *see also Nordstrom Comm'n Cases*, 186 Cal. App. 4th

9  576, 589 (2010) (finding that the trial court did not abuse its discretion to approve

10  a class action settlement that allocated zero dollars ($0) to PAGA penalties).

11      **B.**    **Standards for Court Approval of PAGA Settlements**

12       The California Labor Code does not require the two-step settlement

13  approval process utilized in class actions.  Instead, PAGA settlements are

14  approved on a single motion.  *See Salazar v. Sysco Central Cal.*, 2017 WL

15  1135801, at *2 (E.D. Cal. Feb. 2, 2017) (rejecting the application of class action

16  settlement rules and procedures for PAGA settlement approval).  The LWDA has

17  explained that when trial courts are reviewing PAGA settlements, they should

18  consider whether "the relief provided for under the PAGA [is] genuine and

19  meaningful, consistent with the underlying purpose of the statute to benefit the

20  public." *Salazar*, 2017 WL 1135801, at *2.  Nothing in PAGA changes the

21  strong judicial preference in support of approving settlements.  *See, e.g., Osumi v.*

22  *Sutton*, 151 Cal. App. 4th 1355, 1357 (2007) (confirming the "[s]trong public

23  policy in favor of the settlement of civil cases").

24      **C.**    **The Settlement Is Fair and Reasonable**

25       In the absence of any governing standard, District Courts evaluating PAGA

26  settlements have approved PAGA settlements upon a showing that the settlement

27  terms are "fundamentally fair, adequate, and reasonable in light of PAGA's

Motion for PAGA Settlement Approval

1  policies and purposes." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.,*

2  253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017).

3      Courts examine "proposed settlement agreement[s] to the extent necessary

4  to reach a reasoned judgment that the agreement is not the product of fraud or

5  overreaching by, or collusion between, the negotiating parties, and that the

6  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

7  *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1974, 1801 (1996).

8      **1.**    **Plaintiff's Counsel Has Adequately Investigated the PAGA**
9           **Claims**

10      Plaintiffs' counsel should engage in a significant investigation of the PAGA

11  claims prior to agreeing to the PAGA Settlement, including the legal and factual

12  basis for each claim, and the strength of material claims and defenses. *See Kullar*

13  *v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 133 (2008).

14      Prior to filing this action, then again prior to the mediation, Plaintiff's

15  counsel independently contacted and interviewed sixteen current and former

16  employees from ten of Defendant's twelve stores involved in this matter.

17  (Hamner Decl., ¶ 16.)  Some of these employees gave statements to Plaintiff's

18  counsel which were utilized by Plaintiff at the mediation. (*Id.*)  Each of the

19  current and former employees of Defendant who Plaintiff's counsel contacted

20  complained only of sporadic rest and meal period violations. (*Id.*)  None of these

21  current and former employees of Defendant identified any other wage and hour

22  violations by Defendant such as minimum wage, overtime pay, or expense

23  reimbursement violations. (*Id.*)  Some employees alleged they had at times

24  received a late rest break, but these seemed rare and extremely difficult to prove

25  since there is no requirement that California workers must clock in and out for rest

26  breaks. (*Id.*)

27      Prior to the mediation, Defendant provided Plaintiff's counsel with its

written policies, including a copy of its Employee Handbook, as well as its stand-alone Timekeeping Policy, Meal Period Waiver Policy, and Meal and Rest Period Attestation Policy. (Hamner Decl., ¶ 17.)  After review each of Defendant's relevant written policies, Plaintiff's counsel concluded that they are facially lawful and comply with California law. (*Id.*)

Prior to mediation, Defendant also provided Plaintiff's counsel a voluminous sampling of time and pay records under a mediation privilege. (Hamner Decl., ¶ 18.)  The materials provided included a sampling of employee timeclock and attestation records from the 12 stores involved in this settlement for multiple months in the last year. (Hamner Decl., ¶ 19.)  This sampling included an excel spreadsheet of time clock entries for 28,361 total work shifts. (*Id.*)  Every time a Floor and Decor employee clocks out at the end of their shift, they are required to indicate whether they received meal and rest meal periods in compliance with Defendant's lawful polices. (*Id.*)  Only approximately 1% of the 28,361 work shifts analyzed by Plaintiff's counsel involved a Floor and Decor employee indicating a missed meal period for a particular work shift.  Defendant's policy is that when an employee indicates that they did not receive a compliant meal or rest period, Defendant pays the affected employee a premium of one hour's pay as provided by the California Labor Code.

Plaintiff's counsel's investigation of the materials provided by Defendant and Plaintiff's counsel's subsequent discussions with current and former Floor and Decor employees confirms this process. (Hamner Decl., ¶ 20.)  Plaintiff's counsel has therefore determined that the meal and rest period violation rate in this case is extremely low, and Plaintiff may not be able to prove any such violations at all. (*Id.*)  Indeed, during the entirety Plaintiff's employment with Defendant, Plaintiff indicated on only one occasion that she was not provided with a compliant meal or rest period. (*Id.*)

Motion for PAGA Settlement Approval

### 2.    Plaintiff's Counsel Has Made A Reasonable Valuation of The PAGA Claims

From Plaintiff's counsel's investigation of the PAGA claims, as detailed above, Plaintiff's counsel determined that Plaintiff was unlikely to obtain a significant PAGA penalty against Defendant.  (Hamner Decl., ¶ 21.)

Plaintiff's counsel believes the most favorable estimate of the maximum penalties for Defendant's 12 stores during the 49 pay periods at issue here is:

- 15 total rest break violations per pay period (735 total)
- 22 total meal break violations per pay period (1,078 total)

This equates to a total of $147,000 in maximum PAGA penalties for rest break violations, $215,600 in maximum PAGA penalties for meal period violations.  This equals a maximum potential PAGA penalty of $362,600.

However, Defendant's defenses to these claims are admittedly quite strong. First, Defendant maintains lawful written policies that employees are required to acknowledge receipt of during their employment.  Second, for every missed meal or rest period, Defendant can likely show that the vast majority (if not all) of these have been cured by the payment of one hour's premium pay in compliance with California law.  Third, because no current and former employees of Defendant identified any other wage and hour violations by Defendant, such as a failure to pay minimum wage or overtime, Plaintiff would be unable to recover PAGA penalties on her wage statement and Section 203 claims, as claims for meal and rest claims cannot form the basis for these derivative claims.  *See, e.g., Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 468 (2019) ("Causes of action for waiting time and itemized wage statement penalties (§§ 203, 226) generally are referred to as derivative of an employee's right to the wages themselves."; "[W]e hold that section 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226."); *Garybo v. Bros.*, 2020 WL

11

1   2765661, at *7 (E.D. Cal. May 28, 2020) ("California's Second District Court of

2   Appeal recently determined a claim under Section 226.7 [for failure to provide

3   meal and rest period premiums] does not entitle an aggrieved employee to pursue

4   derivative penalties under Sections 203 and 226. . . . The court also reasoned that

5   payments for failure to provide rest periods are not wages owed to employees for

6   time worked, but rather are penalties paid by the employer.") (citing *Naranjo*, 40

7   Cal. App. 5th at 473-74).[1]

8          The rest period claims would also be extremely difficult and costly to

9   prove, requiring Plaintiff to rely exclusively on the testimony of individual

10  employees, given that employees do not clock out for rest periods. (Hamner Decl.,

11  ¶ 25.)   The testimony of individual employees would lead to countless

12  individualized issues and mini-trials, which would likely render this matter

13  unmanageable. (*Id.*)  In addition, this witness testimony would almost certainly

14  be countered by witness testimony from Defendant supporting the argument that

15  its employees regularly received timely and uninterrupted rest breaks.  (*Id.*)

16  Because of this there is a real risk that only a small percentage of rest period

17  violations could be proven, if any could be proven at all.  (*Id.*)

18         As such, it is Plaintiff's informed opinion that were these PAGA claims to

19  be fully litigated, there would be a substantial risk that the litigation would result

20  in no PAGA penalties at all being recovered by the State or any allegedly

21

22  _____

23  [1]    *See also Mejia v. Illinois Tool Works Inc.*, 2019 WL 8135433, at *12 (C.D.
    Cal. Dec. 12, 2019) ("The Court follows the reasoning of the multiple courts that

24  have held employees cannot recover waiting time penalties for expense
    reimbursements and meal and rest period premiums.") (citations omitted); *Ling v.*

25  *P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) ("We

26  understand that the remedy for a section 226.7 violation is an extra hour of pay, but
    the fact that the remedy is measured by an employee's hourly wage does not

27  transmute the remedy into a wage as that term is used in section 203, which

Motion for PAGA Settlement Approval

1   "aggrieved" employees.  (Hamner Decl., ¶ 26.)

2   ### 3.    The Notice of PAGA Settlement and The Release of Claims Are Proper

3

4   PAGA does not require that notice be sent to aggrieved employees prior to a

5   settlement approval hearing.  PAGA merely requires that notice of the settlement

6   be provided to the LWDA at the same time it is presented to the court.  *See* Cal.

7   Lab. Code § 2699(l), (2).

8   The proposed notice to the PAGA Settlement Members provides the

9   necessary information regarding the case, the settlement, how the settlement

10  amount is distributed, the amount the PAGA Settlement Member is receiving and

11  how his or her individual share was calculated, what PAGA claims are being

12  released, that these are the only claims being released, and the contact information

13  for Plaintiff's and Defendant's counsel.  (Hamner Decl., ¶ 27.)

14  Since employees at Floor and Decor stores must be able to read and speak

15  English, Plaintiff's counsel does not believe the notice should also be written in

16  another language.  (Hamner Decl., ¶ 28.)

17  Plaintiff respectfully submits this is an adequate and informative notice to

18  the PAGA Settlement Members.

19  ### 4.    Plaintiff's Counsel's Adequacy and Experience

20  Courts give "considerable weight to the competency and integrity of

21  counsel and the involvement of a neutral mediator in [concluding] that [the]

22  settlement agreement represents an arm's length transaction entered without self-

23  dealing or other potential misconduct." *Kullar v. Foot Locker Retail, Inc.*, 168

24  Cal. App. 4th 116, 129 (2008); *see also In re Sutter Health Uninsured Pricing*

25  *Cases*, 171 Cal. App. 4th 495, 504 (2009).)

26  _____

27  authorizes penalties to an employee who has separated from employment without
    being paid.").

13

Motion for PAGA Settlement Approval

1    Plaintiff's counsel has practiced wage and hour class actions since 2008.

2    (Hamner Decl., ¶ 29.)   Plaintiff's counsel has prosecuted and settled numerous

3    PAGA settlements, as both standalone PAGA settlements and as part of broader

4    class action settlements, in both state and federal court, as both lead counsel and

5    co-lead counsel. (*Id.*)   Plaintiff's counsel declares that the settlement is the

6    product of an arm's length and adversarial private full day mediation conducted by

7    an experienced wage and hour mediator.  (*Id.*)

8           **5.**    **There Are No Other Related or Overlapping PAGA Cases**

9        No notice(s) of related case(s) have been filed.  (Hamner Decl., ¶ 30.)

10   Plaintiff's counsel is not aware of any other related or overlapping PAGA claims

11   which are currently being prosecuted against Plaintiff. (*Id.*)

12   **V.**    **CONCLUSION**

13       Plaintiff respectfully requests that the proposed PAGA settlement and

14   release be approved by this Court, and the Court execute the [Proposed] Order

15   filed herewith.

16

17   **DATED:**   November 24, 2020     **HAMNER LAW OFFICES, APLC**

18

19

20   By:   Christopher J. Hamner, Esq.
         Attorneys for Plaintiff Janetta Bank

21

22

23

24

25

26

27