UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTA BANKS, an individual California resident, and the proposed class,<br><br>Plaintiff,<br><br>v.<br><br>FLOOR AND DECOR OUTLETS OF AMERICA, INC., a Delaware corporation; and DOES 1 THROUGH 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02573-JWH-MAAx<br><br>**ORDER ON AMENDED MOTION FOR APPROVAL OF PAGA SETTLEMENT AND RELEASE** |

# I. INTRODUCTION

Before the Court is the unopposed amended motion of Plaintiff Janetta Banks for approval of settlement and release under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698–2699.5.[1] For the reasons explained below, the Court **APPROVES** the proposed settlement.

# II. BACKGROUND

## A. Procedural Background

On March 18, 2020, Banks filed her Complaint against Floor and Decor Outlets of America, Inc. ("FAD").[2] Banks asserted claims for relief for (1) failure to pay minimum wages; (2) failure to provide rest brakes; (3) failure to provide meal period or compensation in lieu thereof; (4) failure to pay overtime wages; (5) wage statement violations; (6) failure to pay wages of terminated or resigned employees; (7) unfair business practices (Bus. & Prof. Code §§ 17200-17208); (8) injunction; and (9) violation of PAGA.[3] In her Complaint, Banks alleged that she was a cashier for FAD from about November 2019 to January 2020. Banks alleged that FAD's "corporate policies and procedures are such that [Banks] and the class she seeks to represent were not able to, or permitted to, take timely rest and meal breaks."[4] FAD's pay policies also allegedly "resulted in a failure to pay all wages due for compensable work or work time wherein Plaintiff remained subject to their employers' [*sic*] control"[5] Banks also alleges that FAD failed to provide itemized wage statements as California law

---

[1] Amended Motion for Approval of Settlement and Release (the "Motion") [ECF No. 24].
[2] Compl. [ECF No. 1].
[3] *Id.*
[4] *Id.* at ¶ 6.
[5] *Id.* at ¶ 9.

requires.[6] Her Complaint includes class allegations regarding the predominance of common questions of law and fact, typicality, adequacy of representation, and superiority.[7]

On June 18, 2020, Banks filed her Amended Complaint,[8] in which she asserts a single claim for relief for violation of PAGA.[9] FAD answered the Amended Complaint on July 2, 2020.[10] On July 13, 2020, the Parties filed a Joint Stipulation to Stay Proceedings Pending the Outcome of Mediation.[11] According to this stipulation, the Parties had scheduled a mediation "for September 15, 2020, with well-respected wage and hour mediator Lisa Klerman."[12] On July 15, 2020, the Court stayed all proceedings in this matter until September 30, 2020,[13] and ordered the parties to file a status report regarding the outcome of the mediation.[14] The Parties complied, reporting that "[w]ith Ms. Klerman's assistance," they "were able to reach a proposed settlement of the claims brought by Plaintiff in this matter under [PAGA]."[15]

On November 30, 2020, Banks filed the instant Motion.

On January 5, 2021, the Court issued an Order to Show Cause Regarding Subject Matter Jurisdiction.[16] In its OSC, the Court noted that "[n]either the original Complaint nor the [Amended Complaint] contains the requisite

---

[6] *Id.* at ¶ 11.
[7] *Id.* at ¶¶ 16-20.
[8] First Am. Compl. (the "Amended Complaint") [ECF No. 13].
[9] *See id.*
[10] Answer to Amended Complaint [ECF No. 14].
[11] Joint Stipulation to Stay Proceedings Pending the Outcome of Mediation (the "Stipulation to Stay Case") [ECF No. 16].
[12] *Id.* at 1:4-5.
[13] Order on Stipulation to Stay Case [ECF No. 17].
[14] *Id.*
[15] Joint Post-Mediation Status Report 1:6-8 [ECF No. 20].
[16] Order to Show Cause Regarding Subject Matter Jurisdiction (the "OSC") [ECF No. 25].

statement regarding the basis for this Court's jurisdiction"[17] and that it was not clear whether "the requirements of diversity jurisdiction have been met, with respect to either the diversity of citizenship of the parties or the amount in controversy."[18] In response, the Parties filed a Stipulation for leave to file a Second Amended Complaint.[19]

On January 29, 2021, the Court issued an order discharging the OSC and finding that, "[b]ased upon the pleadings of record and the representation of counsel that Defendant's primary place of business is Georgia, the Court . . . has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)."[20] The Parties then filed a revised Stipulation to File an Amended Complaint,[21] which the Court approved.[22] On February 7, 2021, Banks filed her Second Amended Complaint,[23] which adds a claim on behalf of Banks for pregnancy discrimination in violation of the Fair Employment and Housing Act.[24] The Second Amended Complaint does not include any class allegations.[25]

**B.    Terms of the Proposed Settlement**

Banks entered into the PAGA Settlement Agreement on behalf of herself and approximately 1,234 other employees alleged to have been similarly

---

[17]    *Id.* at 1 (citing L.R. 8-1).
[18]    *Id.*
[19]    Stipulation for leave to file a Second Amended Complaint [ECF No. 26].
[20]    Order Re: Motion for PAGA Settlement Approval [ECF No. 28].
[21]    Stipulation for leave to file a Second Amended Complaint [ECF No. 29].
[22]    Order Granting Leave to File Second Amended Complaint [ECF No. 30].
[23]    Second Amended Complaint [ECF No. 31].
[24]    Second Amended Complaint at ¶¶ 22-25.
[25]    *See generally id.*

aggrieved at 12 FAD stores.[26] The "PAGA Period" is February 6, 2019, through the date of the approval of the Settlement Agreement.[27]

Under the proposed Settlement Agreement, FAD will pay a total of $35,000, inclusive of attorneys' fees and costs, settlement administration, and the amounts to be paid to the Labor and Workforce Development Agency ("LWDA") under PAGA.[28] Banks' counsel seeks an award of attorneys fees in the amount of $5,000.[29] The Parties request that the Court appoint Phoenix Settlement Administrators as the Settlement Administrator.[30] Settlement administration costs will be paid from the total settlement amount and will not exceed $4,350.[31] After deducting the attorneys' fees and settlement administration fees, FAD will pay a net amount of $25,650, 75% of which will be paid to the LWDA, with the remainder paid to the approximately 1,234 employees who are included in the PAGA settlement.[32]

## III. DISCUSSION

### A. Legal Standard

"The California legislature enacted PAGA because of inadequate financing and staffing to enforce state labor laws." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1120-21 (9th Cir. 2014) (citing 2003 Cal. Stat. Ch. 906, §§ 1-2). Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 980

---

[26] Am. Decl. of Christopher Hamner ("Hamner Decl.") [ECF No. 24-1], Ex. B, Proposed Settlement Agreement and Release of PAGA Claims (the "Settlement Agreement"), § I.8.
[27] *Id.* at § I.7.
[28] *Id.* at § IV.A.
[29] *Id.* at § IV.B.1.
[30] *Id.* at § IV.C.1
[31] *Id.* at § IV.C.3.
[32] *See* Motion at 2:8-15.

(2009).  Of the civil penalties recovered, 75% goes to LWDA "for enforcement of labor laws," while the remaining 25% goes to the aggrieved employees. Cal. Lab. Code § 2699.  "An employee plaintiff suing, as here, under [PAGA], does so as the proxy or agent of the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986.

"Because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'" *Hartley v. On My Own, Inc.*, 2020 WL 5017608, at *2 (E.D. Cal. Aug. 25, 2020) (quoting Cal. Lab. Code § 2699(l)(2)) (alterations in original).  The proposed settlement must be submitted to the LWDA to permit it to comment on the settlement if it elects to do so.  *Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017).

"PAGA does not set a clear standard for evaluating settlements." *Basiliali v. Allegiant Air, LLC*, 2019 WL 8107885, at *3 (C.D. Cal. July 1, 2019). But because the plaintiff acts as a proxy for state law enforcement agencies, "the Court's task in reviewing the settlement is to ensure that the state's interest in enforcing the law is upheld."  *Ramirez*, 2017 WL 3670794, at *3.  Courts have evaluated proposed PAGA settlements "in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *Id.* (quoting Cal. Lab. Code § 2699(e)(2)).  Many courts also "employ the class action settlement factors enumerated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)." *Basiliali*, 2019 WL 8107885, at *3.  "The factors from *Hanlon* that may apply to a PAGA settlement include:  (1) strength of plaintiff's case; (2) risk, expense, duration, and complexity of the litigation; (3) fairness of the settlement amount; and (4) experience and views of counsel." *Id.* (citations omitted).  The Court applies these factors below.

B. **Statutory Requirements**

As an initial matter, the statutory requirements of PAGA have been met. Under PAGA, the plaintiff must give legal notice to LWDA and the proposed settlement must be submitted to LWDA when it is submitted to the court for review. Cal. Lab. Code §§ 2699(l)(1) & (l)(2). Banks has complied with these requirements.[33]

C. **Fairness of Proposed Settlement**

1. **Strength of Case**

Under the *Hanlon* factors, the Court first evaluates the strength of the case. Banks' counsel states that he independently interviewed 16 current and former employees of FAD.[34] These current and former employees complained of only sporadic rest and meal period violations.[35] Although some employees complained of receiving late rest breaks, "these seemed rare and extremely difficult to prove since there is no requirement that California workers must clock in and out for rest breaks."[36] After reviewing FAD's written policies, Banks' counsel concluded that they were facially lawful and in compliance with California law.[37] Banks' counsel also reviewed a sampling of employee timeclock records and found that only about 1% of 28,361 work shifts indicated a missed meal period.[38] In sum, while Banks' PAGA claims may have merit, they may be difficult to prove and recovery may be limited. This factor therefore weighs in favor of approving the settlement.

---

[33]   Hamner Decl. at ¶¶ 2, 3, & 15.
[34]   Motion at 9:14-18.
[35]   *Id.* at 9:18-20.
[36]   *Id.* at 9:23-26.
[37]   *Id.* at 10:3-5.
[38]   *Id.* at 10:6-19.

### 2. Risk, Expense, Duration, and Complexity of the Litigation

For the reasons discussed above, there is some risk involved in pursuing this case. The investigation that Banks' counsel conducted indicates that the rate of violations is low, and Banks may not be able to prove these violations.[39] The total *potential* PAGA penalties that Banks' counsel has calculated amounts to $362,600.[40] But FAD has many potential defenses to these claims, and the claims could be challenging to litigate in light of these defenses.[41] This factor therefore weighs in favor of settlement approval.

### 3. Fairness of the Settlement Amount

Under the proposed Settlement Agreement, FAD will pay a total of $35,000, inclusive of attorneys' fees and costs, settlement administration, and the amounts to be paid to the LWDA under PAGA.[42] Banks' counsel seeks an award of attorneys' fees in the amount of $5,000.[43] Settlement administration costs will not exceed $4,350.[44] The Settlement Agreement incorporates the division of proceeds required under PAGA, which results in a net payment of $19,237.50 to LWDA and $6,412.50 to the approximately 1,234 employees who are included in the PAGA settlement, or roughly $5 on average to each employee.[45] *See* Cal. Lab. Code § 2699(i). While this payment is admittedly skimpy, the Court finds the settlement amount to be fair and in accord with PAGA's policy objectives, given the limited number of alleged violations and the challenges to proving them.[46] Moreover, the settlement was reached after

---

[39] *See id.* at 10:20-27.
[40] *Id.* at 11:12.
[41] *See id.* at 11:13-12:17.
[42] Settlement Agreement at § IV.A.
[43] *Id.* at § IV.B.1.
[44] *Id.* at § IV.C.3.
[45] *See* Motion at 5:7-13.
[46] *See id.* at 10:6-13:1.

substantial investigation, multiple conferences of counsel, and a full-day mediation.[47]

### 4. Experience and Views of Counsel

Finally, both sides of this dispute are represented by experienced counsel.[48] The Parties' respective attorneys have determined that the Settlement Agreement is fair and appropriate, which weighs in favor of approval. The Court also notes that Banks' counsel seeks a relatively modest payment of $5,000 in attorneys' fees, which is less than 15% of the gross settlement amount.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Plaintiff's Motion is **GRANTED**.

2. The Court approves and confirms the release and waiver of PAGA claims provided for in the Settlement Agreement.

3. Plaintiff's PAGA claims are hereby **DISMISSED with prejudice**.

4. Judgment shall be entered pursuant to the terms of the Settlement Agreement, with the Court retaining jurisdiction with respect to all matters related to the administration and implementation of the PAGA Settlement Agreement and any and all claims asserted in, arising out of, or related to the claims made in this lawsuit, including but not limited to all matters related to the settlement and the determination of all controversies relating thereto.

5. Counsel for the parties are **DIRECTED** to confer and, no later than May 26, 2021, to lodge a Proposed Judgment for the Court's consideration.

**IT IS SO ORDERED.**

Dated: May 19, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[47] Hamner Decl. at ¶¶ 5, 6, & 17-20.
[48] See id. at ¶ 29.